UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JENNIFER LEISURE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:15-cv-00069 |
| v. ) | |
| ) | Judge Sharp |
| WHISPERING PINES OWNERS ) | Magistrate Judge Knowles |
| ASSOCIATION, INC. and RICHARD ) | |
| G. CAMPBELL, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Presently pending before the Court are two motions: a Motion for Summary Judgment by Defendants Whispering Pines Owners Association, Inc. and Richard G. Campbell, (Docket No. 29), and a Motion to Strike by Plaintiff Jennifer Leisure, (Docket No. 10). For the reasons set forth below, Defendants' Motion for Summary Judgment will be denied and Plaintiff's Motion to Strike will be granted.

**I.      Factual & Procedural Background**

The following facts are undisputed. This is a premises liability case arising from an injury sustained by Plaintiff Jennifer Leisure ("Plaintiff") on August 15, 2014. Plaintiff injured her foot on a wooden dock while visiting her grandparents, who reside in a home on Pine Lake. Pine Lake is part of a community called Whispering Pines, which is owned by Defendant Richard G. Campbell and managed by Defendant Whispering Pines Owners' Association (collectively "Defendants"). Plaintiff's grandparents have a private dock on the lake and can access the shared community space, referred to as the clubhouse, by taking a boat across Pine

1

Lake and leaving it at the community dock. Both Plaintiff's grandparents' dock and the community dock are made of wood.

In August of 2015, Plaintiff visited her grandparents at Whispering Pines for her sister's bachelorette party. She had previously been to Whispering Pines approximately 30 or 40 times, including two prolonged summer stays. Plaintiff spent the morning with family and friends on her grandparents' property, including on their private dock. She had one beer around 1:00p.m. and then spent the early afternoon visiting indoors with her aunts and cousins. Around 4:00p.m., Plaintiff, her sister (Erin Novielli), and a friend (Melissa Giuffre), took a boat from Plaintiff's grandparents' dock to the community dock. They were bringing supplies to the clubhouse for a "Sips n Strokes" event wherein the bachelorette party would drink wine and paint. They paddled across the lake to bring party supplies to the clubhouse for the painting event. Plaintiff wore "flip flop" sandals in the boat.

Upon reaching the community dock, Plaintiff and Ms. Giuffre hopped out of the boat in order to tie it up. As Plaintiff walked across the dock, her foot struck a splintered piece of wood that had separated and lifted from the dock. The splintered board punctured the top of her foot. Plaintiff testified in her deposition that from her vantage point, looking down at the dock, she could not see the splintered board sticking up because it was painted the same color as the rest of the dock. Her sister, who was still in the boat at the time of the injury and was at approximate eye level with the dock, saw the raised piece of wood just as Plaintiff's foot struck it. After Plaintiff struck the splintered board, Ms. Giuffre broke it off the dock and moved it to the side to prevent any further injuries. Because it was removed immediately, the parties do not know precisely how high the splintered board was raised above the rest of the dock when it injured Plaintiff. Neither are they able to submit photographic evidence of what the dock looked like

2

before Plaintiff's injury. Plaintiff has, however, submitted photographs of the dock after the accident, (Docket No. 36-5), which reveal what Plaintiff and her expert describe as "mold and mildew" on and around the splintered board, (Docket No. 36-1, Dep. of J. Leisure, at 37, 49-51; Docket No. 36-6, Dep. of J. Cooper, at 26-27). Plaintiff also described the separated board as "visibly warped and deteriorated." (Docket No. 36-2 at 11).

Plaintiff returned to her grandparents' house after the injury and her grandmother, a retired registered nurse, cleaned and bandaged her wound. The injury caused Plaintiff a not insignificant amount of pain; she could not put pressure on her foot and used a wheelchair for a portion of the weekend. Approximately 36 hours after the injury, her uncle took her to the walk-in clinic at Vanderbilt. A physician at Vanderbilt examined Plaintiff's foot, determined that her wound was infected, and prescribed antibiotics and pain medication. The doctor also drew a circle around the inflamed area and instructed Plaintiff to see another doctor if the redness did not subside or if the inflammation spread outside the circled area. Plaintiff, who resides in New Jersey, returned home that afternoon but her foot did not improve. She visited another doctor in New Jersey and ultimately had to have surgery on her foot. She continues to have lingering pain and discomfort from the injury.

Defendant Campbell testified in his deposition that he inspects the dock regularly, although he does not have a schedule for doing so or a record of those inspections. He estimated that he inspected the dock several weeks before Plaintiff's injury and did not observe the splintered board. However, he also testified that it may have been more or less than several weeks between his last inspection and Plaintiff's injury. Thus, it is not known when the community dock was last inspected. Defendant Campbell also stated that no one else had

reported a dangerous condition the dock to him and that no other injuries had occurred on the dock.

Plaintiff filed suit, alleging that the splintered board was a dangerous condition about which Defendants knew or should have known. (Docket No. 1). Plaintiff asserts that Defendants breached their duty to warn her of a dangerous condition and failed to properly maintain the dock. She contends that as a direct and proximate result of Defendants' negligence, she suffered physical and economic injuries. Plaintiff seeks compensatory damages for medical expenses past and future, pain and suffering, and loss of enjoyment of life. Defendants filed an Answer denying that they behaved negligently and asserting a number of affirmative defenses. Plaintiff has moved to strike Defendants' Fifth Affirmative Defense and Defendants have sought summary judgment on Plaintiff's negligence claim on the grounds that they did not breach their duty of care.

## II. <u>Defendants' Motion for Summary Judgment</u>

### A. <u>Legal Standard</u>

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). At the summary judgment stage, the Court considers the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. See <u>Chapman v. UAW Local 1005</u>, 670 F.3d 677, 680 (6th Cir. 2012) (en banc). However, the non-moving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986). Therefore, summary judgment is proper where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." Van Gorder v. Grand Trunk W. R.R., 509 F.3d 265, 268 (6th Cir. 2007) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

### B. Legal Analysis

Plaintiff asserts a negligence claim against Defendants. Because this case is before the Court on diversity jurisdiction, 28 U.S.C. § 1332, the law of the forum state—Tennessee—governs the substantive issues. See, e.g., Biegas v. Quickway Carriers, Inc., 573 F.3d 365, 374 (6th Cir. 2009) ("Under the Erie doctrine, federal courts sitting in diversity apply the substantive law of the forum state and federal procedural law.") (citing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)). In Tennessee, to succeed on a suit in negligence, the plaintiff must show that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3) the plaintiff suffered some injury or loss; (4) cause in fact; and (5) proximate cause. McClung v. Delta Square Ltd. P'ship, 937 S.W.2d 891, 894 (Tenn. 1996). Here, Defendants argue that they did not breach any duty owed to Plaintiff and thus are entitled to summary judgment. However, factual disputes preclude summary judgment.

A proprietor owes a customer a duty "to exercise reasonable care to keep the premises in a reasonably safe and suitable condition, including the duty of removing or warning against a dangerous condition traceable to persons for whom the proprietor is not responsible[.]'" Simmons v. Sears, Roebuck & Co., 713 S.W.2d 640, 641 (Tenn. 1986) (quoting Allison v. Blount Nat'l Bank, 54 Tenn. App. 359 (1965)). A proprietor breaches this duty when it allows a dangerous condition or defect to exist on the premises if that condition or defect was created by the owner, operator or his agent; or, if the condition is created by someone else, when the business owner had actual or constructive notice that the dangerous condition or defect existed prior to the injury." Morris v. Wal–Mart Stores, Inc., 330 F.3d 854, 858 (6th Cir. 2003); see also

Blair v. West Town Mall, 130 S.W.3d 761, 764 (Tenn. 2004) (citing Martin v. Washmaster Auto Ctr., U.S.A., 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996)).

Plaintiff does not argue that Defendants created the dangerous condition, but rather that Defendants had at least constructive notice of the splintered board and breached their duty of care by failing to remedy or warn others of it. "[C]onstructive notice can be established by proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition." Blair, 130 S.W.3d at 764 (citing Simmons v. Sears, Roebuck & Co., 713 S.W.2d 640, 641 (Tenn.1986)); see also Washmaster Auto Ctr., 946 S.W.2d at 318. Plaintiff claims that the unsafe condition, the splintered board, must have existed when Campbell last inspected the dock. She points to the warped condition of the splintered board, the degree to which it had separated from the dock, and the presence of mold and mildew. Plaintiff argues that these factors indicate that the splintered board had long been deteriorating and creating a risk of harm, or so a reasonable jury could conclude. She presents her own testimony, photographic evidence, and expert testimony in support of her arguments. (Docket No. 36-1, Dep. of J. Leisure; Docket No. 36-5, photographs; Docket No. 36-6, Dep. of J. Cooper).

The Court agrees with Plaintiff: the evidence on the record sufficiently creates a jury question regarding Defendants' notice of the dangerous condition, especially when the Court draws all inferences in Plaintiff's favor, as it is bound to do. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Where a non-moving party has created a genuine issue of material fact, summary disposition is inappropriate. See Moran v. Al Basit LLC, 788 F.3d 201, 204 (6th Cir. 2015).

Defendants argue that regardless of notice, the splintered board was an "open and obvious" condition for which they cannot be held liable. According to Defendants, they "*only* had a duty if the foreseeability and gravity of potential harm outweighed the burden to fix the boat dock." (Docket No. 30 at 11) (citing Green v. Roberts, 398 S.W.3d 172, 177 (Tenn. Ct. App. 2012) (emphasis in original)). Defendants assert that harm was unforeseeable and, even if harm was foreseeable, the gravity of any potential harm was low. Thus, the burden on them "to continually monitor, sand, refinish, and seal" was not outweighed by the low risk of harm. Plaintiff responds by noting that harm is foreseeable "where the possessor has reason to expect that the invitee's attention may be distracted." Restatement (Second) of Torts § 343A (1965). The implication of this argument is that Defendants could reasonably anticipate that those on the community dock would be focused on tying up their boats rather than evaluating the quality of the dock.

The Court is unpersuaded by Defendants' arguments regarding the open and obvious nature of the dangerous condition for three reasons. First, this is in tension with their argument that they had no notice, actual or constructive, of the splintered board. If it was indeed open and obvious, then presumably Mr. Campbell or another resident of Whispering Pines would have noticed and reported the issue. Second, if it was open and obvious, then harm would have been quite foreseeable. Those who are using docks are often trying to quickly disembark and secure their vessels, limiting their ability to pay close attention to the ground. Third, the gravity of the potential harm on a dock strikes the Court as quite acute: when water is involved, one may never foreclose the possibility of drowning. Thus, the Court finds that reasonable jury could conclude

that the foreseeability and gravity of any harm outweigh the burden on Defendants to maintain a safe dock. Even if the splintered board was open and obvious, Defendants had a duty of care and whether they breached it is a question for the jury. The record does not support summary judgment at this time and the Court will therefore deny Defendants' Motion.

Before turning to Plaintiff's Motion to Strike, the Court pauses briefly to address Defendants' arguments regarding Plaintiff's expert witness. In their Reply, Defendants raise for the first time challenges to the testimony of Mr. Cooper. Specifically, they assert he is not a qualified expert and that his testimony should be excluded under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). The law in the Sixth Circuit is well-established that a reply brief is not the proper forum for raising new arguments. See <u>Scottsdale Ins. Co. v. Flowers</u>, 513 F.3d 546, 553 (6th Cir. 2008) (issue are "waived when they are raised for the first time in . . . replies to responses"); <u>Sanborn v. Parker</u>, 629 F.3d 554, 579 (6th Cir. 2010) (observing that the Sixth Circuit has "consistently held . . . that arguments made to us for the first time in a reply brief are waived"). The Court is aware that Defendants moved for summary judgment before Plaintiff deposed her expert. However, Defendants attended the deposition of Mr. Cooper and were presumably aware of Plaintiff's plan to depose him prior to filing their Motion, which they chose to file months before the deadline for dispositive motions. (Docket No. 26, Initial Case Management Order; Docket No. 36-6, Dep. of J. Cooper). Moreover, Plaintiff sought an extension of time to respond to Defendants' Motion for Summary Judgment, a filing in which she expressly stated that the extension was to enable her to incorporate her expert's testimony into her Response in Opposition. (Docket No. 32). Defendants responded in support of the extension. (Docket No. 33). Had Defendants desired to challenge Plaintiff's expert testimony, they had ample opportunity to request supplemental briefing on that issue.

Indeed, they may still challenge the testimony through a properly-filed motion to exclude. They may not, however, raise challenges to Plaintiff's expert testimony in their Reply in support of their Motion for Summary Judgment.

### III.     Plaintiff's Motion to Strike

Pursuant to Federal Rules of Civil Procedure 12(f) and 12(c), Plaintiff has filed a Motion to Strike or for Partial Judgment on the Pleadings. (Docket No. 11). Plaintiff argues that the Court should strike Defendants' Fifth Affirmative Defense because Defendants have "failed to comply with the Tennessee Health Care Liability Act ["THCLA"] by filing a certificate of good faith as required by Tenn. Code Ann. § 29-26-122(b)." (Docket No. 11 at 1). Section 29-26-122 of the THCLA requires that "[w]ithin thirty (30) days after a defendant has alleged in an answer or amended answer that a non-party is at fault for the injuries or death of the plaintiff and expert testimony is required to prove fault as required by § 29-26-115, each defendant or defendant's counsel shall file a certificate of good faith. . . ." Tenn. Code Ann. § 29-26-122. Defendants' Fifth Affirmative Defense asserts that the doctors who treated Plaintiff are partially at fault for failing "to prevent further injury" and that Defendants' liability should be reduced by "by the percentage of fault attributable to Ms. Leisure's treating physicians." (Docket No. 24 at 5). Defendants do not dispute that they failed to submit the certificate of good faith but assert that Plaintiff's Motion is untimely and that their Fifth Affirmative Defense did not need to comply with the THCLA's good faith certificate provision.

Defendants argue that the Motion to Strike is untimely under Rule 12(c) because it was filed more than 21 days after they served their Answer. Judge Trauger recently addressed a Motion to Strike arising from an alleged failure to comply with the certificate provision of the THCLA. See Portwood v. Montgomery Cty., Tenn., No. 3:13-CV-0186, 2013 WL 6179188

(M.D. Tenn. Nov. 25, 2013). In Portwood, as here, the defendant raised comparative negligence arguments in an affirmative defense. Specifically, the defendant sought to place partial blame for the extent of the plaintiff's injury on the medical services provided by a sub-contractor. The defendant failed to file a certificate of good faith, leading the Portwood plaintiff, like Plaintiff here, to move to strike the affirmative defense. In granting the motion to strike, Judge Trauger rejected the defendant's arguments regarding the timeliness of the motion. She noted that the 21-day deadline set forth in Rule 12(f) is incompatible with the 30-day notice period set forth in Section 29-26-122(b); a party must allow the 30-day period to expire before she can bring noncompliance to the Court's attention. Id. at *6. Here, Plaintiff moved to strike on the first business day after THCLA's 30-day period had expired. (Docket No. 15 at 1-2). Moreover, Plaintiff also grounds her Motion in Rule 12(c), which does not have a 21-day deadline. Defendants' argument regarding the timeliness of Plaintiff's Motion is therefore unavailing.

Defendants next argue that this is a negligence action, not a medical malpractice suit, and therefore falls outside the ambit of the THCLA's certificate requirement. However, the Supreme Court of Tennessee has observed that the THCLA was broadened in 2011 to apply to "all civil actions alleging that a covered health care provider or providers have caused an injury related to the provision of, or failure to provide health care services." Ellithorpe v. Weismark, 479 S.W.3d 818, 827 (Tenn. 2015). Indeed, the THCLA expressly states that it encompasses "*any civil action*, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, *regardless of the theory of liability on which the action is based.*" Tenn. Code Ann. § 29-26-101 (emphasis added). To the extent courts previously had to distinguish between negligence and medical malpractice suits to determine the applicability of

the THCLA, the need for such distinctions has been "statutorily abrogated." Ellithorpe, 479 S.W.3d at 827. Defendant has inadvertently swept this case within the bounds of the THCLA by placing blame on non-party health care providers and cannot escape this unintended consequence by trying to pigeonhole this case as a negligence action.[1]

Defendants also argue against the applicability of the THCLA on the basis that no expert testimony is necessary to prove the doctors' comparative fault. According to Defendants, Plaintiff's treating physicians may be faulted without expert testimony because the errors attributable to them lay within the common knowledge of a layperson. After the parties briefed Plaintiff's Motion to Strike, Defendant amended its Answer to clarify that the Fifth Affirmative Defense is premised on the belief that "Ms. Leisure's medical providers failed to remove the entire splinter from her foot, resulting in infection and a hospital stay." (Docket No. 24 at 5). Defendants assert that it "is within the knowledge of a laymen [sic] that, when a foot is infested by a splinter, it must be removed and that failure to do so could result in an infection." (Docket No. 12 at 10).

Defendants are correct that where a claim otherwise subject to the THCLA may be proved without expert testimony, the good faith certificate requirement does not apply. See Ellithorpe, 479 S.W.3d at 829; Osunde v. Delta Med. Ctr., No. W2015-01005-COA-R9-CV, 2016 WL 537075, at *9 (Tenn. Ct. App., filed Feb. 10, 2016) ("Given this understanding, a determination that a claim falls within the THCLA does not automatically trigger all of the statute's requirements. The need for expert proof will not lie if the matter is within the common knowledge of a layperson, and if there is no need for expert proof, a plaintiff's complaint will not fail for failure to attach a certificate of good faith under section 29–26–122."). Tennessee Courts

---

[1] Even absent the statutory abrogation outline in Ellithorpe, the THCLA would still apply because Defendants' Fifth Affirmative Defense is, in essence even if not in express terms, grounded in medical malpractice, not negligence. See Portwood, 2015 WL 6179188 at *7-8.

11

of Appeal have "observed that 'only the most obvious forms of [medical] negligence may be established without expert testimony.'"  Newman v. Guardian Healthcare Providers, Inc., No. M2015-01315-COA-R3-CV, 2016 WL 4069052, at *6 (Tenn. Ct. App. July 27, 2016) (citing Ayers v. Rutherford Hosp., Inc., 689 S.W.2d 155, 160 (Tenn. Ct. App. 1984)).  Defendants argue that it is common knowledge that leaving a splinter in a foot might cause infection and therefore that they can prove the comparative fault of Plaintiff's treating physicians without the assistance of expert testimony.  This is not so: at present, there is no evidence in the record that supports the proposition that a portion of the splinter remained inside Plaintiff's foot.  To demonstrate that a foreign object remained in Plaintiff's foot and caused further injury, Defendants will likely need to present expert testimony.  Even if an expert need not testify regarding the risk inherent in failing to fully remove a splinter, the Court suspects that an expert will need to testify regarding whether the splinter was, in fact, fully removed by Plaintiff's doctors.  Put another way, based on the evidence now available, the Court cannot conclusively determine that the error was within the common knowledge of a layperson.  Defendants' Fifth Affirmative Defense therefore remains squarely within the THCLA.

Plaintiffs' Motion to Strike or for Judgment on the Pleadings was timely and Defendants have not persuaded the Court that their Fifth Affirmative Defense can skirt the good faith certificate requirement of the THCLA.  Accordingly, Plaintiff's Motion will be granted.

## IV. Conclusion

Plaintiff has presented sufficient evidence to show that a reasonable jury could find that Defendants' had constructive knowledge of the dangerous condition.  Accordingly, summary disposition is inappropriate and Defendants' Motion for Summary Judgment will be denied. Plaintiff has also shown that Defendants should have complied with the good faith certificate

provision of the THCLA. Because Defendants did not do so, their Fifth Affirmative Defense will be dismissed.

A separate order shall enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE